UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEST BEND MUTUAL
INSURANCE COMPANY,

            Plaintiff,                    Civil Action No. 21-cv-11007
                                          HON. BERNARD A. FRIEDMAN
vs.

AFFILIATED DIAGNOSTIC OF
OAKLAND, LLC, *et al.*,

            Defendants,

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 112) AND DENYING DEFENDANT'S COUNTER MOTION FOR SUMMARY JUDGMENT (ECF NO. 114)

This matter is before the Court on plaintiff West Bend Mutual Insurance Company's motion for summary judgment (ECF No. 112) and defendant Citizens Insurance Company of the Midwest's response to West Bend's motion for summary judgment and counter motion for summary judgment (ECF No. 114). West Bend has filed a consolidated reply in support of its own motion for summary judgment and response to Citizens' counter motion. (ECF No. 116). And Citizens has filed a reply in support of its counter motion for summary judgment. (ECF No. 117). Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions

without a hearing.  For the reasons stated below, the Court shall grant West Bend's

motion and deny Citizens' motion.

I.   Background

By and large, West Bend and Citizens do not dispute the relevant facts;

rather, the parties dispute the application of the law to the facts.  (ECF No. 114,

PageID.1089).

West Bend's amended complaint states that multiple individuals

("claimants") allege that they were involved in an automobile accident on February

3, 2020.  (ECF No. 3, PageID.280).  West Bend asserts that this accident involved

a vehicle listed under an insurance policy, issued by West Bend to Kristy's Early

Childhood Development Center, Inc., pursuant to which West Bend undertook to

insure Kristy's solely against risks associated with the childcare business.  (*Id.*).

However, at the time of the accident, West Bend alleges that the vehicle was not

being used for the childcare business but was instead being used by a separate

business entity, DLB Transportation LLC, which had held the vehicle out for hire

to the claimants.  (*Id.*, PageID.280-81).  West Bend asserts that during its

investigation of the accident, it determined that Kristy's had made material

misrepresentations or concealed material facts when the policy was issued in so far

as DLB would be using the vehicle in connection with its business.  (*Id.*,

PageID.281).  Accordingly, West Bend initiated a declaratory judgment action (20-

2

cv-11621) seeking rescission of the policy and a declaration that the policy was void *ab initio*. (*Id.*).[1]  West Bend obtained a default judgment against Kristy's and a declaration that the policy is void. (*Id.*, PageID.282; Exhibit 2).

West Bend asserts that despite the rescission of the policy as to Kristy's, certain defendants in this case have filed lawsuits against West Bend in state court seeking reimbursement for the alleged medical services provided to the claimants under an assignment of rights. (*Id.*, PageID.282).  Accordingly, West Bend now seeks to enforce the rescission and voiding of the policy as to these defendants. (*Id.*).

Only one defendant appeared in this matter and now remains: Citizens Insurance Company of the Midwest. (*See* ECF No. 104, PageID.787).  Citizens is the assigned claims plan insurer for the claims arising out of the underlying accident. (ECF No. 3, PageID.289-90); (ECF No. 114, PageID.1078).[2]

In its motion for summary judgment, West Bend seeks to extend rescission of the policy as to 16 natural person defendants[3] and certain medical providers who

---

[1] West Bend asserts that it invited the claimants of whom it was aware at the time to participate but that counsel for those individuals either failed to respond or refused to participate in the rescission action. (*Id.*).

[2] The Michigan Assigned Claims Program is "the insurer of last resort" in the event that no insurer can be identified to cover an individual accidentally injury in a motor vehicle accident. *Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 35 (Mich. 2018) (McCormack, J., dissenting); Mich. Comp. Laws § 500.3172.

[3] Specifically: Kavell Rashid, Demonio Dukes, Abdul Shabazz, Colita Coles, Canaan Thomas, Robert Thompson, Deontae Thompson, Mario Jones, Cathy

allegedly provided services to natural person defendants. (ECF No. 112, PageID.823). Citizens opposes West Bend's motion, and instead urges the Court to grant summary judgment in its favor and hold West Bend responsible for the claims for personal protection insurance whose claims have been assigned to Citizens through the assigned claims plan. (ECF No. 114, PageID.1078).[4]

## II.   Legal Standard

A court should grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). All evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

Jones, Michael Davis, Tracey Abdur-Rasheed, Tanae Rasheed, Brittney Robinson, Yolanda Houston, Deon Edwards, and Justin Sandifer. (ECF No. 112, PageID.823). Default judgment was entered against each of these individuals in this case on March 2, 2022. (ECF No. 104).

[4] Citizens asserts that only 11 of the natural person defendants claimed benefits through the assigned claim plan and that all of those claims were assigned to Citizens: Tanae Rasheed, Tracey Abdur-Rasheed, Michael Davis, DeMonio Dukes, Deon Edwards, Cathy Jones, Britney Robinson, Justin Sandifer, Abdul Shabazz, Canaan Thomas, and Yolanda Houston. (*Id.*, PageID.1090-91). Citizens asserts that the remaining natural person defendants (*i.e.*: Colita Coles, Mario Jones, Kavell Rashid, Deontae Thompson, and Robert Thompson), do not have claims handled by Citizens through the assigned claims plan. (*Id.*, PageID.1091).

Neither side addresses this discrepancy. The Court therefore assumes that Citizens does not oppose rescission of the policy as to the five natural person defendants who do not have claims handled by Citizens through the assigned claims plan. And again: default judgment was entered against all of these individuals on March 2, 2022. (ECF No. 104).

III.   Analysis

    A. Rescission of an insurance policy as to innocent third parties under Michigan law requires a balancing of the equities

"When deciding a diversity case under state law, a federal court must apply the law of the state's highest court.  If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from all relevant data," which includes judgments from the state appellate court. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (cleaned up).

In 2018, the Supreme Court of Michigan held that the innocent-third-party rule had been abrogated; that rule formerly "prevent[ed] an insurer from rescinding an insurance policy on the basis of material misrepresentations in the application for insurance as to a claim made by a third party who is innocent of the fraud." *Bazzi v. Sentinel Ins. Co.*, 919 N.W.2d 20, 23-24 (Mich. 2018).  However, the Michigan Supreme Court made clear that rescission as to innocent third parties is not an absolute right.  *Id.* at 29.  A court is not required to grant rescission in all cases but must balance the equities to determine whether the plaintiff is entitled to the relief sought.  *Id.* at 30.  And "when two equally innocent parties are affected,

the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss." *Id.* (cleaned up).

Shortly thereafter, in a concurring opinion in a separate case, former Chief Justice Markman provided his perspective on a "workable standard by which the trial court is to exercise its equitable discretion in innocent-third-party cases." *Farm Bureau Gen. Ins. Co. of Mich. v. ACE Am. Ins. Co.*, 919 N.W.2d 394, 395 (Mem) (Mich. 2018) (Markman, C.J., concurring).

> Both parties are presumed to be fully "innocent," and this deserves to be recognized as a starting point for analysis. . . .
>
> In resolving the ultimate issue in innocent-third-party cases, courts should consider the following nonexclusive list of factors, as applicable to the case at hand:
>
>> <u>First</u>, the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured, which may have led to a determination by the insurer that the insurance policy had been procured on a fraudulent basis. If the insurer could have with reasonable effort obtained information indicating that the insured had committed fraud in procuring the insurance policy, equity may weigh against rescission because the insurer may be deemed to have acted without adequate professional diligence in issuing and maintaining the policy.
>>
>> <u>Second</u>, the specific relationship between the innocent third party and the fraudulent insured. If the innocent third party possessed some knowledge of the fraud-- perhaps because of a familial or other relationship-- equity may weigh in favor of rescission because that individual is seeking to recover from the insurer despite knowledge of the fraud.
>>
>> <u>Third</u>, the precise nature of the innocent third party's conduct in the injury-causing event. Where the innocent third party acted

recklessly or even negligently in the course of the injury-causing event, equity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently.

<u>Fourth</u>, whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy. Such an avenue for recovery may include, for example, the assigned claims plan or health insurance. Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud.

<u>Fifth</u>, whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party. That is, whether enforcement of the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured. In such a case, equity may weigh in favor of rescission because enforcement of the policy would transfer liability to the innocent third party from the insured who committed the fraud to the insurer that did not commit wrongdoing.

In few cases will all of these factors be applicable; in some cases, none will be applicable; and in other cases, additional factors may be applicable.

*Id.* at 396-97 (footnotes omitted).  In *Pioneer State Mutual Insurance Company v. Wright*, 952 N.W.2d 586, 595 (Mich. Ct. App. 2020), the Michigan Court of Appeals adopted Justice Markman's framework.

Here, West Bend and Citizens agree that the providers' claims rise and fall with those of their patients, as the providers are the assignees of the natural person defendants.  (ECF No. 112, PageID.851-52); (ECF No. 114, PageID.1110).

7

B. <u>The first factor, whether West Bend could have investigated the</u>
<u>subject matter of the fraud before the innocent third party was injured,</u>
<u>does not weigh in favor of either party</u>

Justice Markman's first factor looks at "the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured, which may have led to a determination by the insurer that the insurance policy had been procured on a fraudulent basis." *Farm Bureau*, 919 N.W.2d at 396 (Markman, C.J., concurring). "If the insurer could have with reasonable effort obtained information indicating that the insured had committed fraud in procuring the insurance policy, equity may weigh against rescission because the insurer may be deemed to have acted without adequate professional diligence in issuing and maintaining the policy." *Id.*

West Bend urges that it "could not have done anything more to uncover Kristy's fraud prior to the accident." (ECF No. 112, PageID.830). Noting that the vehicle was purchased "just months before the accident occurred," West Bend states that "[t]here is no evidence that [it] had any notice or opportunity to discover that the bus would be used in a way so incredibly far removed from Kristy's childcare operations." (*Id.*). West Bend points to testimony that as of the time of the accident, "DLB's business of renting the bus for hire had only recently begun." (*Id.*, PageID.843). West Bend further urges that an insurer does not owe a duty to

the insured to investigate or to discover intentional material misrepresentations. (*Id.*, PageID.484) (citing *Hammoud v. Metro. Prop. & Cas. Ins. Co.*, 563 N.W.2d 716, 718 (Mich. Ct. App. 1997); *Northland Radiology, Inc. v. USAA Cas. Ins. Co.*, No. 346345, 2020 WL 3394549, at *4 (Mich. Ct. App. June 18, 2020)).

Citizens, by contrast, emphasizes that the correct test is not whether the insurer *did* discover the fraud but whether it *could have* discovered the fraud; Citizens urges that here West Bend could have discovered the fraud. (ECF No. 114, PageID.1096-99). Citizens states that "West Bend conducted some form of investigation before issuing the policy" and argues that "West Bend obtained more information about the bus than was contained in the quote request, meaning that it had tools available to it to obtain more information, but it elected not to use them." (*Id.*, PageID.1097-98). Citizens urges that requesting a photograph of the bus was well within West Bend's capabilities, and that multiple individuals testified that the bus had "dance poles" in it, which suggests that the bus "was not designed for transporting children." (*Id.*, PageID.1098 & n.2). Next, Citizens notes that West Bend was able to investigate the accident and commence an action to rescind the policy within months, undermining the assertion that four months was insufficient time to investigate the use of the bus before the accident. (*Id.*, PageID.1098-99). Finally, Citizens urges that "West Bend's argument that it has no duty to investigate representations made by applicants and insureds has been rejected by

Michigan courts." (*Id.*, PageID.1099) (citing *Wright*, 952 N.W.2d at 594 n.6)). "[T]his Markman factor is not concerned with whether the carrier *should* investigate, but whether it *could* investigate." (ECF No. 114, PageID.1099).

In its response brief, West Bend also cites to *Mullen v. Progressive Marathon Insurance Company*, No. 350015, 2020 WL 6231720, at *1, 5 (Mich. Ct. App. Oct. 22, 2020). In that case, the Michigan Court of Appeals noted that "[t]here is no evidence that [insurer] could have done more to discover the truth of [insured's] misrepresentations, nor did [insurer] 'owe a duty to the insured to investigate or verify an individual's representations or to discover intentional material misrepresentations.'" *Id.* at *5 (citing *Hammoud*, 563 N.W.2d at 718) (cleaned up). West Bend also urges that Citizens' citation to *Wright* is misplaced as in that case "[t]here [was] no evidence to suggest that there could or could not have been a more diligent effort . . . to discover contradictions or omissions in [the] application any earlier" whereas in this case, "West Bend has demonstrated that it did not have any notice or opportunity to discover" the true use of the vehicle. *Wright*, 952 N.W.2d at 595; (ECF No. 116, PageID.1757). West Bend argues that the Michigan Supreme Court explicitly "abrogated the easily ascertainable rule, which had previously precluded an insurer from pursuing rescission when the fraud was easily ascertainable." (ECF No. 116, PageID.1758). Finally, West Bend asserts that Citizens' position "would be a detriment to the insurance industry in

10

the form of increased transaction costs for insurers and insureds alike" because insurers would have a duty to verify representations in applications for insurance as well as any changes to an existing policy. (*Id.*).

In its response, Citizens urges that under West Bend's position, this factor would always support rescission because if an insurer has no duty to investigate, it cannot be held responsible for inaction.   (ECF No. 117, PageID.1777).  Citizens also asserts that West Bend confuses the "easily ascertainable rule" with "a factor that weighs against rescission where insurers decline to use tools at their disposal to discover fraud." (*Id.*, PageID.1777-78).  Citizens also objects to West Bend's citation of unpublished Michigan Court of Appeals opinions, urging that the Court should instead rely on Citizens' citation of *Wright*.  (*Id.*, PageID.1778).[5]  Finally, Citizens states that because the policy provided more than just coverage for personal protection insurance, the value and condition of the property should have been important to West Bend and, thus, it would have been reasonable and within the tools available to West Bend to secure a photograph of the bus.   (*Id.*, PageID.1779).

The Court finds that this factor does not weigh in either party's favor. Although Citizens has offered testimony that the vehicle may have contained dance

---

[5] Citizens also suggests that the Court should consider a concurring opinion in a subsequent *Pioneer State* case which noted that in evaluating the first factor a court "may look beyond the procurement phase to determine whether the insurer acted promptly to discover the fraud so as not to prejudice the claimant." (*Id.*, n.1).

poles before the accident and thus was not intended for use by a childcare center, Citizens has not demonstrated that West Bend should have been on notice of Kristy's misrepresentation.[6]   At its core, Citizens' argument is that with some additional investigation West Bend could have figured out that the bus was not being used by Kristy's in the manner indicated in the insurance policy: it had plenty of time to do so, and merely requesting a photograph of the vehicle might have alerted West Bend to the deception.  But the law does not place such a burden on insurers.  *Wright*, 952 N.W.2d at 595 n.6 ("[t]he first factor does not impose a duty to investigate upon insurers, . . . but merely addresses the process of procurement of insurance and any information disclosed"); *Northland Radiology*, 2020 WL 3394549, at *4 (rejecting the "argument that [the insurer] should have investigated before issuing the policy").  Citizens has offered no indication of some previous malfeasance, irregularity in the application, or other information that would have made it imprudent for West Bend to take Kristy's at its word that the vehicle was going to be used by the childcare center for transporting children.  And "an insurer has a reasonable right to expect honesty in the application for insurance."  *Bazzi*, 919 N.W.2d at 28.

---

[6] Moreover, it is speculative whether a photograph would have depicted any dance poles and whether the presence of dance poles in a newly acquired vehicle would have sufficiently put West Bend on notice that Kristy's did not ultimately intend to use the vehicle as represented in its application for insurance.

12

On the other hand, West Bend has not carried its burden on this factor to show that it could not have identified the fraud earlier. *Farm Bureau*, 919 N.W.2d at 396 (Markman, C.J., concurring) ("the defrauded insurer bears the burden of establishing that rescission is warranted"). The Court is not persuaded that four months was too short a time for West Bend to have conducted an investigation into how the bus was being used before the accident, and nor has West Bend demonstrated, for instance, that it reasonably opted not to pursue additional inquiry based on information supplied by Kristy's.

Accordingly, this factor does not weigh in favor of either party. *See, e.g.*, *Farm Bureau Ins. Co. v. Meadows*, No. 358188, 2023 WL 174814, at *4 (Mich. Ct. App. Jan. 12, 2023).

    C.  <u>The second factor, examination of the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud, weighs against rescission</u>

Justice Markman's second factor examines "the specific relationship between the innocent third party and the fraudulent insured." *Farm Bureau*, 919 N.W.2d at 396 (Markman, C.J., concurring). "If the innocent third party possessed some knowledge of the fraud . . . equity may weigh in favor of rescission because

that individual is seeking to recover from the insurer despite knowledge of the fraud." *Id.* at 396-97.

West Bend does not identify any relationship between Kristy's and the natural person and provider defendants and accordingly urges that this factor should be weighed as neutral. (ECF No. 112, PageID.849). Noting that the starting point of the *Bazzi* equity-balancing framework is that both parties are innocent, West Bend argues that the innocence of natural person and provider defendants should not mitigate against rescission on this factor. (*Id.*, PageID.849-50) (citing *Omar v. Allstate Ins. Co.*, 17-cv-13400, 2019 WL 7593713, at *1 (E.D. Mich. Oct. 30, 2019)).

Citizens disagrees that the factor is neutral, instead urging that the factor "distinguishes being innocent with knowledge of the fraud and participating in the fraud." (ECF No. 114, PageID.1100). "[T]his factor weighs against rescission because, as West Bend concedes, there is no evidence that any of the 'Natural Person Defendants' had any relationship to Kristy's, let alone any relationship suggesting that they might have had knowledge of Kristy's misrepresentations." (*Id.*). Citizens objects to West Bend's citation to *Omar v. Allstate Insurance Company*, 17-cv-13400, 2019 WL 7593713 (E.D. Mich. Oct. 30, 2019), urging that *Omar* was decided before the Court of Appeals adopted the Markman factors in *Wright*, and that in any event *Omar* does not discuss participation versus

14

knowledge of the fraud but impliedly recognizes, correctly, that a participant in the fraud is not afforded equity-balancing under *Bazzi*.  (ECF No. 114, PageID.1101).

Both West Bend and Citizens here agree that the Court should be engaged in equity-balancing under *Bazzi*. (ECF No. 112, PageID.823); (ECF No. 114, PageID.1078).  Justice Markman made clear that when engaging in this equities-balancing, "[b]oth parties are presumed to be fully 'innocent,' and this deserves to be recognized as a starting point for analysis." *Farm Bureau*, 919 N.W.2d at 396 (Markman, C.J., concurring).  Natural person and provider defendants are accordingly presumed innocent of participation in the fraud; this factor instead looks to whether they *knew of* the fraud.  *Id.*

Here neither side asserts that natural person or provider defendants had any knowledge of the fraud.  Where there is no indication that the innocent third parties knew of the fraud, this factor weighs against rescission.  *See, e.g.*, *Wright*, 952 N.W.2d at 595 ("The second factor, the innocent third party's potential knowledge of the fraud, weighs against rescission because there is no evidence that [the third party] was ever aware of [the insured's] representations.").

D. The third factor, the nature of the third party's conduct in the injury-causing event, weighs against rescission

Justice Markman's third factor looks at "the precise nature of the innocent third party's conduct in the injury-causing event." *Farm Bureau*, 919 N.W.2d at

15

397 (Markman, C.J., concurring).  "Where the innocent third party acted recklessly or even negligently in the course of the injury-causing event, equity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently."  *Id.*

Here, West Bend concedes that "Natural Person Defendants did not directly cause the accident."  (ECF No. 112, PageID.850).[7]  There is no indication that the claimants acted recklessly or negligently.  Accordingly, this factor weighs against rescission.  *See, e.g.*, *Wright*, 952 N.W.2d at 595 (finding that the third factor weighed against rescission where the third party "was simply a passenger . . . and was not involved in the operation of the vehicle").

 E. <u>The fourth factor, the availability of an alternate avenue for recovery if the insurance policy is not enforced, weighs in favor of rescission</u>

Justice Markman's fourth factor looks at "whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy."  *Farm Bureau*, 919 N.W.2d at 397 (Markman, C.J., concurring).  "Such an avenue for recovery may include, for example, *the assigned claims plan* or health insurance.  Where the innocent third party possesses an alternative means of

---

[7] West Bend raises a related argument regarding the individuals' conduct immediately after the accident, which will be addressed below.  (ECF No. 112, PageID.850-51).

recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud." *Id.* (emphasis added).

West Bend urges that this factor mitigates in favor of rescission because the innocent third parties "have an alternative source of recovery through the assigned claims plan insurer, Citizens." (ECF No. 112, PageID.845).

Citizens urges that it is the "insurer of last resort, not second to last resort" and that "the assigned claims system is not intended to promote rescission to the detriment of third parties." (ECF No. 114, PageID.1102). Citizens acknowledges that certain costs are unavoidable through the assigned claims system but urges that ensuring only eligible claims proceed under the plan is essential to containing those costs. (*Id.*, PageID.1103).[8] Citizens acknowledges that Justice Markman suggested that availability of benefits through the assigned claims plan might favor rescission but urges that "he did not develop this position, nor did he make this statement in absolute terms." (*Id.*, PageID.1104 n.4). Finally, Citizens urges that it, too, is a blameless party and thus, contrary to West Bend's position, the Court should balance equities between natural person and provider defendants, West Bend, *and* Citizens. (*Id.*, PageID.1105).

West Bend has the better argument in this instance. Justice Markman specifically indicated that the existence of an "assigned claims plan" as an avenue

---

[8] Citizens also points to a Ninth Circuit case addressing the California Insurance Guarantee Association in support of its position. (*Id.*, PageID.1104).

for recovery may weigh in favor of rescission.  *Farm Bureau*, 919 N.W.2d at 397

(Markman, C.J., concurring).   He developed this position to the same extent he

developed the rest of his statements and none were offered in categorical terms.

The Michigan Court of Appeals has already rejected Citizens' argument that, as

another blameless party, the equities must also be weighed as against Citizens.

> [T]he pertinent analysis weighs the equities between the innocent
> insured and the innocent third party, and Farm Bureau points to no
> authority to support its assertion that factor four should also consider
> whether rescission would be fair to the alternate source of recovery.
> Indeed, it would be odd to insert such a requirement for this factor
> given that Justice Markman's concurrence, which is the source of all
> the factors, specifically listed the MACP as an alternate source of
> recovery to be considered under factor four, but did not say that the
> factor should consider the equity to the MACP.

*Meadows*, 2023 WL 174814, at *5 n.9.  The existence of an assigned claims plan

through which natural person and provider defendants may recover weighs in favor

of rescission.  *See, e.g.*, *Mullen*, 2020 WL 6231720, at *5; *Pioneer State Mut. Ins.*

*Co. v. McCallister*, No. 359077, 2022 WL 4587178, at *5 (Mich. Ct. App. Sept.

29, 2022).[9]

---

[9] Citizens' response brief provides additional caselaw for the proposition that this
factor should be considered "last due to the nature of assigned claims benefits."
(ECF No. 117, PageID.1779-80) (citing *El-Achkar v. Sentinel Ins. Co.*, No.
348380, 2020 WL 7090091 (Mich. Ct. App. Dec. 3, 2020); *AAA Member Select
Ins. Co. v. Johnson*, No. 349608, 2020 WL 4906195 (Mich. Ct. App. Aug. 20,
2020); *McCallister*, 2022 WL 4587178).   The Court finds these citations less
persuasive than the caselaw indicating that the availability of recovery through an
assigned claims plan favors rescission.   Although the court in *McCallister*
concluded that if the fourth factor were the only factor supporting rescission,

F. The fifth factor, whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party, is inapplicable here

Justice Markman's fifth factor examines "whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party." *Farm Bureau*, 919 N.W.2d at 397 (Markman, C.J., concurring).

West Bend urges that this fifth factor is inapplicable. (ECF No. 112, PageID.842 n. 2). Citizens urges that "[t]his factor does not apply or, to the extent it applies, it weighs against rescission." (ECF No. 114, PageID.1106). Citizens speculates that it is doubtful that Kristy's would have tort liability to the bus passengers, but urges that "even if West Bend provides coverage, it may have

_____

rescission would be inequitable, it first found that "[t]he availability of another source of PIP benefits, from Nationwide in this case, weighs in favor of rescission." *McCallister*, 2022 WL 4587178, at *5. *El-Achkar* concluded that "the fact that an injured third person can seek PIP benefits from the MACP as a last resort should not and cannot be factored into the equities balancing test's fourth-factor inquiry"; this runs directly contrary to the guidance provided in Justice Markman's discussion of the fourth factor. *El Achkar*, 2020 WL 7090091, at *5. And *AAA Member Select* concluded only that "it is unclear how much weight the availability of alternative sources of recovery should be afforded" and found that in any event there was evidence in the record that an alternative source of recovery might not have been available in that case. *AAA Member Select*, 2020 WL 4906195, at *6-7.

recourse against Kristy's, either under the common law . . . or under the no-fault act." (*Id.*, PageID.1106-07).

The Court agrees with the parties that this factor is inapplicable.

### G. West Bend's additional factors weigh in favor of rescission

In addition to the five factors identified by Justice Markman, West Bend offers two additional arguments in support of rescission.   As Citizens acknowledges, (ECF No. 114, PageID.1094-95), Justice Markman's list of factors is "nonexclusive." *Farm Bureau*, 919 N.W.2d at 396 (Markman, C.J., concurring). "In few cases will all of these factors be applicable; in some cases, none will be applicable; and in other cases, additional factors may be applicable." *Id.* at 397. Any additional considerations beyond Justice Markman's five factors, however, should help the Court to make "a determination as to which of the two parties is truly *more* or *less* 'innocent,' such that its interests should, or should not, prevail on the matter of rescission." *Id.* at 396.   "This, in short, sets forth the legal *standard*-- what are the respective or comparative levels of genuine 'innocence' of the two parties?" *Id.*

West Bend makes two additional arguments in support of rescission beyond the factors outlined by Justice Markman.   First, West Bend urges that natural person defendants "have repeatedly stonewalled and thwarted West Bend's efforts to investigate their claims and alleged injuries" and that their failure to participate

20

in this litigation has resulted "in a substantial increase in time and cost for West Bend to prosecute this case."  (ECF No. 112, PageID.831).  Because "there is no evidence that West Bend has engaged in any wrongdoing in connection with Natural Person Defendants' claims," West Bend urges that "Natural Person Defendants' conduct in pursuing their claims also weighs in favor of rescission." (*Id.*).  In particular, West Bend notes that natural person defendants refused to appear for examination under oath and that six individuals refused to appear for depositions in a related state-court lawsuit.  (*Id.*, PageID.847). Pointing out that "none of the Natural Person Defendants or Provider Defendants have answered or appeared to contest rescission," West Bend urges that "[t]heir inaction speaks volumes as to the equities in this case."  (*Id.*, PageID.848).

Second, West Bend urges that although natural person defendants did not directly cause the accident, testimony was offered that "Natural Person Defendants acted as though they were injured only after a police officer entered the bus." (*Id.*, PageID.850).  Broadly, West Bend suggests that "there is no evidence of any wrongdoing by West Bend in connection with Natural Person Defendants' claims that might tip the equities against rescission." (*Id.*, PageID.851).

With regard to the first consideration, the bus passengers' failure to appear for depositions or examinations under oath, Citizens "has no basis to dispute that West Bend requested [examinations under oath] and/or depositions, [but Citizens]

contends that these facts are irrelevant for purposes of balancing the equities." (ECF No. 114, PageID.1091).   Citizens urges that West Bend has not identified any provision in the insurance policy or the no-fault act which would entitle it to examinations under oath and thus West Bend's requests for such examination "were unenforceable in the first place and, therefore, irrelevant."   (*Id.*, PageID.1108).   Citizens also urges that even if there were such a provision regarding examinations under oath, failure to comply with such provision would only entitle an insurer to suspend benefits until compliance, not deny benefits or rescind the policy.   (*Id.*, PageID.1109).   And "the remedy for failing to appear for a properly noticed deposition could ultimately be a contempt order," or West Bend "could have sought to exclude the disobedient persons' claims from the lawsuits, negating the rescission issues altogether." (*Id.*).

With regard to the second consideration, the allegation that natural person defendants only feigned injury after a police officer arrived, Citizens urges that this is "entirely irrelevant" to Justice Markman's third factor (the passengers' fault for the injury-causing event).   (*Id.*, PageID.1102).   "Rather, it weighs on the credibility of the claim for PIP benefits."   (*Id.*).   More broadly, Citizens urges that "West Bend and the bus passengers' innocence to the fraud are equally irrelevant because their innocence is what necessitates balancing the equities in the first place." (*Id.*, PageID.1107).

Contrary to Citizens' position, the Court believes that both of these additional considerations will help it to make "a determination as to which of the two parties is truly *more* or *less* 'innocent.'" *Farm Bureau*, 919 N.W.2d at 397 (Markman, C.J., concurring).   And both considerations weigh in favor of rescission.

The bus passengers' refusal to participate in litigation regarding rescission of the policy as against them suggests either ambivalence or acquiescence in the relief sought by West Bend.   Their failure to appear has resulted in a default judgment being entered against them.   (ECF No. 104).   And, as West Bend points out, Citizens has offered no evidence to demonstrate that the passengers' failure to appear for the examinations under oath and depositions was due to unenforceability.   Where a third-party that is innocent as to the fraud has not acted appropriately in pursuing their claim for personal injuries, the equities may weigh in favor of rescission.   *Omar v. Allstate Ins. Co.*, 18-cv-10697, 2019 WL 205189, at *2 n.2 (E.D. Mich. March 14, 2019) (finding that the equities weighed in favor of rescission where there was "significant evidence of [the third-party's] dishonesty in conjunction with his claim").

 Citizens has not offered any rebuttal to the testimony that the natural person defendants only complained of injuries after the police officer entered the bus.   The Court agrees with Citizens that such testimony goes to the credibility of the claim

for benefits.  But such testimony also suggests that the natural person defendants may not have been entirely forthright about the extent of their injuries or claims. (*See, e.g.*, ECF No. 112-7, PageID.1041-42) (deposition testimony of Tonya Briggs that the bus passengers only began acting as if they were hurt after the police officer entered the bus and asked if anyone needed an ambulance).  If the bus passengers were in fact exaggerating their injuries, such subterfuge does nothing to enhance the efficient and equitable resolution of insurance claims and undermines the notion that natural persons are entirely blameless with regard to the post-fraud handling of the claims.  On the other hand, a variety of other entirely legitimate reasons could explain any delay in reporting.  Thus, this testimony only marginally supports rescission.

More broadly: the Court assumes that both West Bend and the bus passengers were innocent with regard to the perpetration of the fraud.  But the passengers' conduct immediately following the accident and during the course of the litigation is not entirely blameless and tips the scales in favor of rescission.

H.  Rescission is warranted pursuant to a balancing of the equities in this case

In sum, Justice Markman's first factor does not weigh in favor of either party; the second and third factors weigh against rescission; and the fourth weighs in favor of rescission.  The parties agree that the fifth factor is inapplicable. The

Court is persuaded that the two additional considerations offered by West Bend regarding the bus passengers' conduct following the accident shed further light onto the true innocence of the parties.

Justice Markman cautioned against merely tallying up the respective factors, but instead urged that Courts should look to the "respective levels of 'innocence' of the insurer and the innocent third party." *Farm Bureau*, 919 N.W.2d at 397 (Markman, C.J., concurring). And "the defrauded insurer bears the burden of establishing that rescission is warranted." *Id.* at 396. Here there is no allegation that the bus passengers were knowledgeable of the fraud, participated in it, or were in any way responsible for their own injuries. But given the availability of benefits through the assigned claims program and the bus passengers' conduct after the accident which has had the effect of obscuring and complicating the litigation related to processing of their claims, the Court finds that the equities favor rescission of the policy as to the natural person and provider defendants.[10] Accordingly,

---

[10] As indicated above: Citizens states that five natural person defendants (Colita Coles, Mario Jones, Kavell Rashid, Deontae Thompson, and Robert Thompson) "do not have claims handled by [Citizens] through the assigned claims plan." (ECF No. 114, PageID.1091). Citizens does not appear to oppose rescission of the policy as to those individuals, and the individuals themselves have forfeited their ability to contest rescission by failing to appear in this lawsuit. (*See* ECF No. 104, PageID.787) (granting default judgment as to those and other defendants).

IT IS ORDERED that West Bend's motion for summary judgment (ECF No. 112) is GRANTED.  The rescission of the policy is extended to natural person defendants and provider defendants and the policy does not provide any coverage or benefits for any of natural person defendants' and provider defendants' claims.

IT IS FURTHER ORDERED that Citizens' counter-motion for summary judgment (ECF No. 114) is DENIED.

**IT IS SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Dated: February 21, 2023          Senior United States District Judge
      Detroit, Michigan

26